**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) | **CRIMINAL ACTION** |
| MICHAEL B. LEE and DAVID GEFKE, | ) ) ) | **NO. 10-1609-TSH** |
| Defendants | ) ) | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) ) | **CRIMINAL ACTION** **NO. 10-1617-TSH** |
| BRANDON MILBY, | ) ) | |
| Defendant | ) ) | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) ) | **CRIMINAL ACTION** **NO. 10-1618-TSH** |
| PATRICK DEHERTOGH, | ) ) | |
| Defendant | ) ) | |

**MEMORANDUM AND DECISION ON PROBABLE CAUSE AND THE GOVERNMENT'S MOTION FOR DETENTION**
**February 18, 2010**

**HILLMAN, M.J.**

**Nature of the Offense and the Government's Motion**

On February 5, 2010, a Complaint issued charging that Michael B. Lee and David Gefke did conspire to collect and attempted to collect, and did collect, using extortionate means, an extension of credit, in violation of 18 U.S.C. §894.  At these Defendants' initial appearance on February 8, 2010, the Government moved for detention pursuant to 18 U.S.C. §3142(e) on the grounds that the Defendants are a danger to the community and/or present a risk of flight.

On February 9, 2010, separate Complaints issued charging Brandon Milby and Patrick Dehertogh with this same offense.  At these Defendants' respective initial appearances held on February 9, 2010, the Government moved for detention pursuant to 18 U.S.C. §3142(e) on the grounds that the Defendants are a danger to the community and present a risk of flight.

On February 12, 2010, a combined probable cause/detention hearing was held for all Defendants.  At that time, the Government clarified that it was moving for detention as to all Defendants under 18 U.S.C. §3142(f)(1)(A)(Defendants are charged with a crime of violence) and as to Defendants Lee, Milby and Dehertogh under 18 U.S.C. §3142(f)(2)(A)(Defendants present a risk of flight).

 Michael J. Kelly, Special Agent with the Federal Bureau of Investigation ("FBI") testified on behalf of the Government and the following exhibits were admitted into evidence the Criminal Complaints and affidavits (*Exs. 1, 2 & 3),* a CD containing 2/4/2010 consensual recordings (*Ex. 4*), summary of text messages downloaded from Lee's cellphones (*Ex. 5*) and still photographs taken from Four Seasons video surveillance (*Exs. 6A- 6G*) .

For the reasons set forth below, I find there exists probable cause as to all Defendants and that Lee and Dehertogh shall be detained pending trial.  Further hearing(s) shall be held with respect to Gefke and Milby to set conditions of release.

2

**Findings Of Fact**

The FBI began investigating the Defendants on February 1, 2010, after receiving information from the Boston Police Department that a local businessman, Michael Carucci, had received threats in connection with the collection of money that he owed to Gefke. Carucci, who owns a real estate company owed approximately $90,000 to Gefke, a real estate broker. Because of financial difficulties, Carucci was unable to repay the debt. In January 2010, Gefke filed a lawsuit against Carucci. Settlement negotiations ultimately broke down. As more fully detailed below, Lee is alleged to be the individual who acted as the primary contact between Carucci and Gefke. Milby and Dehertogh are alleged to have been present when Carucci gave money and/property (watches) to Lee.

On January 28, 2010, Carucci received a telephone call from an individual who identified himself as "Josh Wingenheimer". Wingenheimer stated that he was interested in purchasing property in the BackBay for $1,000,000; the two agreed to meet the next day. On January 29, 2010, three individuals unknown to Carucci walked into the reception area of Carucci's office. One of the men identified himself as Josh Wingenheimer and stated that he clearly was not there to buy a condo. All three men went into Carucci's office. "Wingenheimer" sat in a chair and the other two individuals stood by the closed door with their arms crossed. Wingenheimer mentioned that Carucci owed Gefke money and that "now you owe me", that he wanted things to go as simply as possible, that he didn't want to interrupt Carucci's life at the Four Seasons (where Carucci currently lives) or Carucci's daughter's life at Boston College. Wingenheimer also mentioned finding Carucci's Bentley. Wingenheimer then told Carucci he wanted $10,000 now and $10,000 later. Carucci told Wingenheimer that he did not have the money, but when it

became apparent that the men were not going to leave empty handed, he gave Wingenheimer a check for $1,000 payable to "E. Springfield LLC", Gefke's company. Later that day, Carucci left a second check for $1,000, payable to E. Springfield LLC, at his office for Wingenheimer, which was picked up while Carucci was out of the office. The two checks were ultimately deposited into an E. Springfield LLC account at a Boston bank.

On January 30, 2010, Carucci sent Gefke a text message asking him to contact him, but did not receive a reply. Later that day, Carucci received a text message from Wingenheimer telling him not to contact Gefke, that he doesn't owe Gefke money any more, but instead owes him (Wingenheimer) $58,000.

On February 1, 2010, Carucci received a voice message from Wingenheimer stating that the funds were not available for the checks he had been given and that Carucci should call him or he could come to Carucci's house on the cape. Carucci responded via text stating that Gefke should deposit the checks since he had overdraft protection. Later that day, Carucci's secretary called him and told him that Wingenheimer was at the office; Wingenheimer took the phone and talked to Carucci directly, telling Carucci that he worked for him (Wingenheimer) now. Later that day, Carucci received a text message from Wingenheimer stating that he was at the Bristol Lounge (a restaurant at or adjacent to the Four Seasons) and asking Carucci to call him. They agreed to meet. When Carucci arrived at the Four Seasons, he saw the other two individuals who had come to his office with Wingenheimer standing outside. Carucci met with Wingenheimer who was upset about there not being funds for the two checks; he demanded that Carucci give him his Mont Blanc watch, which has a value of $4,000-5,000. Wingenheimer said Carucci would get the watch back if the checks cleared. Wingenheimer told Carucci he wanted $10,000

4

by Friday. When Carucci said he did not have the money, Wingenheimer said the knew that Carucci had an expensive watch collection and if he gave him the entire collection, they could call it even. He also said the debt was now $60,000. Wingenheimer wanted to meet the next day and get the watches. Carucci agreed to get him the watches the next day. During the meeting, Carucci was making hand gestures-- Wingenheimer stated that if Carucci put his hands up to him, he'd knock him out. After Wingenheimer left, the bartender asked Carucci if he knew "Mike"; the bartender stated that Mike was bad news and that he was a drug dealer and had killed people.

A Boston Police officer was at the Bristol lounge at the time of the meet and saw "Wingenheimer" and the two individuals outside. He saw Wingenheimer sitting at a table with Carucci and an unidentified individual. The officer identified "Wingenheimer" to be Lee.

A witness who observed Carucci and Lee at the dinner meeting at the Four Seasons was shown a photo array and has identified Milby as the third individual present at the table. Video surveillance from the Four Seasons showed Lee and Milby walking together. Lee can be seen showing Milby an object he had in his hands. Dehertogh shows up on the video surveillance standing outside the Four Seasons. The Boston Police officer also recognized Dehertogh and saw him get into a vehicle with Lee and Milby as they left the Four Seasons.

On February 3, 2010, Carucci met Wingenheimer/Lee at a Starbucks. Carucci gave Lee/Wingenheimer 3 watches with a value of about $17,000.

Beginning on February 4, 2010, Carucci began cooperating with the FBI and thereafter, had several consensually recorded telephone conversations with Lee and Gefke, during which references are made to Gefke sending "leg breakers" to see him and Gefke saying that once he

gets the $56,000, it ends. Gefke indicates that he didn't want it to go this far, but he was in a jam himself and that someone had sent him Lee to get his issues cleared up. Gefke states that he is waiting for the two checks to clear and confirms that he (or they) got Carucci's watches, for which he is giving Carucci a $10,000 credit. Gefke also states, on multiple occasions, that it came to this because Carucci had ignored him. In one conversation with Lee, Lee tells Carucci not to come to a meeting with his hands empty. Gefke states that Lee got personal information about Carucci (such as his address) from the state police.

Carucci was shown a photo array by law enforcement agents and identified Lee to be "Wingenheimer." He was shown pictures of Milby; while he thought Milby looked familiar, he wasn't sure where he had seen him. Carucci has identified Dehertogh as one of the men who came to his office with Lee on January 29, 2010[1].

Lee was arrested while in a car being driven by Milby. When interviewed by law enforcement agents, Milby stated that he had been driving Lee around the past few days, including to a dinner meeting at the Four Seasons, and that he was "just the driver." During an inventory search of Milby's vehicle, a felt bag containing two watches was recovered; the watches are believed to belong to Carucci. Additionally, the GPS system showed directions to Carucci's primary residence.

Two cellphones belonging to Lee were also recovered. Texts from and/to Carucci were recovered from the cellphones. Also recovered were text messages to Milby and Dehertogh. There were also text messages to/from Gefke, including text messages in which Gefke provides

---

[1] From the photo array, Carucci was 70-80% sure that Dehertogh was one of the silent individuals who showed up with Lee at the January 29, 2010, meeting at this office. Additionally, Carucci positively identified Dehertogh as one of these individuals when he saw him outside the Four Seasons.

Lee with Carucci's home address and telephone number. There are also text messages between Lee and Gefke concerning Carucci's watches. In one text, Lee refers to Gefke as "boss". An unaddressed note was also found in the car; the note stated something to the effect, I'm going to kill you.

Milby and Dehertogh were arrested together; they were traveling in a car belonging to a third party. At the time of his Dehertogh's arrest, Carucci's business card was found inside his wallet. Additionally, a gym bag was recovered from the car which included identification linking it to Dehertogh. Inside the bag were 100 pills which tested positive for the presence of amphetamine.

The FBI has learned that another individual who owed Gefke money recently received threatening communications from a malel with an Irish accent who identified himself as "Josh Wingenheimer." The victim also received a voice mail directly from Gefke in which Gefke states that it is going to get ugly.

## Probable Cause

From the evidence presented, I find that there is probable cause for the offense charged against these Defendants in the respective Complaints.

## Discussion of the Bail Reform Act

In order to detain a person pending trial under 18 U.S.C. §3142 (The Bail Reform Act), the judicial officer must find by (1) clear and convincing evidence, that the defendant is a danger to the community, or (2) a preponderance of the evidence, that the defendant poses a risk of flight. *See* 18 U.S.C. § 3142 (f); *United States v. Jackson*, 823 F.2d 4-5 (2d Cir. 1987); *United States v. Berrios-Berrios*, 791 F.2d 246, 250 (2d Cir. (1986), cert. denied, 479 U.S. 978, 107

S.Ct. 562 (1986). *See also United States v. Patriarca*, 948 F.2d 789, 792-93 (1st Cir. 1991). The judicial officer may then detain a person pending trial only if, the judicial officer determines that "no condition or combination of conditions [set forth under 18 U.S.C. § 3142 (b) or (c)] will reasonably assure the appearance of the person as required and the safety of any other person and the community". 18 U.S.C. § 3142(e).

In making the determination as to whether "any condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and of the community", the judicial officer is compelled to consider the following factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including:
>
>> 1. the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> 2. whether, at the time of the current offense or arrest, he was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and
>
> (4) the nature and seriousness of the danger to any other person or the community that would be posed by the person's release . . . .

18 U.S.C. §3142(g).   The judicial officer "may not impose financial condition that results in the pretrial detention of the person". 18 U.S.C. § 3142(c).

**Discussion of Whether Detention is Warranted**

A. <u>Defendants' Histories and Characteristics</u>

1. <u>Lee</u>

Lee, who is 27 was born in Ireland. ICE records confirm that he is in the country legally, as a conditional resident. His last entry into the United States was in 2006. Lee has an Irish passport.

He is married and the couple have one child. Lee's parents live in Ireland. His three brothers live between California, England and Boston.

At the time of his arrest, Lee was residing with Milby. Prior to living with Milby, he had been living with his wife and child in Braintree, MA. He has previously lived in Randolph, MA and Dorchester, MA.

Lee has run his own construction company for the past two years. For two years prior to that, he worked for another construction company.

Lee currently has two pending criminal cases: one federal case in which he is charged with wire fraud and a state case in which he is charged with assault & battery with a dangerous weapon.

In both cases, Lee had been released on conditions. However, as a result of the instant charges, an arrest warrant issued in *United States v. Lee*, Cr. Act. 09-10050-GAO. Lee was brought before the Court, Sorokin, M.J. to determine whether his pre-trial release should be revoked. In that case, Lee assented to an Order of Detention, without prejudice. *See United States v. Lee*, Cr. Act. 09-10050-GAO at Docket Entries of February 12, 2010.

2. <u>Gefke</u>

Gefke, who is 48 years old, was born in Wisconsin. He has lived in Massachusetts since about 1975 and currently resides in Waltham, Massachusetts with his wife, mother-in-law and sister-in-law. The residence is owned by his mother-in-law. His mother lives in Florida and his father lives in Arizona. His two siblings, a brother and a sister, reside in the Mid-West. He has two children from a prior marriage who reside locally with their mother.

Gefke graduated from Boston University. He is a real estate broker and owns investment properties. Gefke has substance abuse issues. Gefke has a United States passport, which he has surrendered.

Gefke has no prior criminal record.

### 3. Dehertogh

Dehertogh, who is 48 years old, was born in Belgium. He came to the United States when he was three years old (1964). He claims to be a legal permanent resident, however, ICE has been unable to locate his records. Dehertogh has a GED and automotive repair certificate.

Dehertogh is divorced and has a daughter with his ex-wife. Dehertogh's daughter has been adopted by his sister and her husband and they live in Michigan, nearby to his mother. He has minimal family ties to this District.

He has lived in Massachusetts since he was in the second grade. For the past three years, he has lived at a sober house in South Boston, MA, which he states is affiliated with Answer House[2]. He did recently leave the sober house for a period after relapsing. For 4-5 years prior to that, he lived at various boarding houses in the Boston area.

---

[2] The Pretrial Services Officer spoke with a receptionist at Answer House. That individual was not familiar with an affiliated sober house at the address provided by Dehertogh.

10

Dehertogh is currently unemployed and has no assets. He does receive unemployment benefits. Dehertogh has several health related issues and has a history of substance abuse problems, both drug and alcohol related.

Although Dehertogh's criminal record, which is summarized below, does not include convictions for significant crimes, it does include multiple probation violations:

| Date Of Offense | Offense Convicted | Disposition |
|---|---|---|
| 4/6/81 | Assault w/ Dangerous Weapon | 2 years probation |
| 4/13/84 | OUI | probation one year |
| 11/5/84 | OUI | probation, violation, six months committed |
| 4/23/92 | Possession Hypodermic Syringe | one year probation |
| 3/15/01 | Possession Class A Controlled substance | 2 years probation, violation of probation, revoked, committed 30 days |
| 1/11/02 | Failure to Obey Police Officer | one year probation, violation of probation, revoked, 90 days committed |
| | Operating After Suspended License | Same |
| | Resisting Arrest | Same |
| 6/5/03 | Larceny from a person, 2 counts | 90 days committed |
| 11/10/03 | Use Without Authority | 30 days committed |
| 11/28/05 | Attempt to Commit Crime | 18 months probation, violation |

Dehertogh also has two motor vehicle type offenses that were continued without a finding. Dehertogh's record includes three defaults.

### 4. Milby

Milby is 42 years old and was born in New York, New York, where he resided until age 2. He then moved to Provincetown, Massachusetts where he resided during his adolescence. The family moved to Cambridge, Massachusetts during his high school years and he graduated from Cambridge Ridge and Latin High School. In 1988, he entered the Navy; he was honorably discharged in 1996. Thereafter, he resided in Quincy, Massachusetts for ten years with his now ex-wife and children. He currently resides in Dorchester, Massachusetts, where he has lived for approximately the past four years. At the time of his arrest, he was living alone, but had been living with Lee. Milby has a United States passport, but does not travel internationally.

Milby is divorced. He and his ex-wife had five children, one of whom died. As to the four surviving children: one resides with his ex-wife; one is in the marines and is currently in Japan; one resides in Revere; and one has been adopted by another couple and lives with them. Milby's parents reside in Provincetown, Massachusetts; it appears that during the school year, his mother resides in Cambridge, Mass., where she teaches. He has two sisters, both whom reside out of state.

Milby states that he has been a real estate broker for the past three years and works on commission; business has been slow recently. For ten years prior to that, he was a cab driver. He volunteers at the YMCA teaching boxing. He provided no information concerning his assets or liabilities.

Milby has multiple criminal charges, but no convictions; his record does include two defaults. Additionally, two Chapter 209A restraining orders have been taken out against him: one, on behalf of his minor child, which expired after ten days, and one, on behalf of his now ex-wife, which expired after eighteen months.

B. Nature of the Offense; Weight of the Evidence; Whether Detention Is Warranted

1. Nature of the Offense

These Defendants are each charged with a serious offense for which, if they are convicted, provides for a maximum penalty 20 years.

2. Weight of the Evidence

Counsel for Gefke and Milby argued that there was insufficient evidence to establish probable cause against their clients. I disagree. In fact, as to Defendants, Milby and Dehertogh, I find that the evidence is strong. As to Defendants Gefke and Lee, I find the evidence to be substantial, bordering on overwhelming.

3. Whether Detention Is Warranted

a. Lee

i. Whether Lee Poses A Danger To The Community

The Government has alleged that Lee has conspired to extort money/property from Carucci. The Government has presented substantial evidence that Lee directly and/or by inference threatened Carucci with violence if he did not give him money and/or property to satisfy what was a legitimate debt owing to Gefke. At the time that Lee engaged in this conduct, he was on release awaiting trial in this Court and in Massachusetts state court; the state court charges involve crimes of violence.

Given the totality of the circumstances, particularly the fact that Lee was on pre-trial release in both this Court and state court at the time he committed the offense alleged in the Complaint, the nature of the offense, and his conduct which involved at least implicit threats of violence to another, I find by clear and convincing evidence that Lee is a danger to the community and that there are no conditions or combination of conditions that I could impose that would assure the safety of the community if he were released.

### ii. Whether Lee Poses A Risk Of Flight

Lee is an Irish national. While he has a wife and child here, he also has significant family ties outside the country. Furthermore, if he is convicted of *any* of the charges outstanding against him, he likely faces deportation after serving any sentence imposed. In this case, I have found that the evidence against him is substantial, if not overwhelming.

Considering the totality of these circumstances, I find by a preponderance of the evidence that Lee poses a risk of flight and that there are no conditions or combination of conditions that I could impose that will assure his appearance, as required.

### b.   Whether Gefke Poses A Danger To The Community

The Government has alleged that Gefke has conspired to extort money/property from Carucci. Furthermore, the Government has represented that Lee and Gefke recently contacted another individual who owed Gefke money and Gefke stated to this individual that things could get ugly. At the same time, Gefke has no prior criminal record.

While it is a close call, considering the totality of these circumstances, I cannot find by clear and convincing evidence that Gefke is a danger and that there are no conditions or

combination of conditions that would assure the safety of the community if he were released. Therefore, I decline to hold Gefke and he will be released on very strict conditions.

### c. Dehertogh

#### i. Whether Dehertogh Poses A Danger To The Community

The Government has alleged that Dehertogh has conspired to extort money/property from Carucci. The Government has presented strong evidence that Dehertogh was present at the January 29, 2010, meeting and that his purpose for being at that meeting was, at the very least, to intimidate Carucci. While he has not served any significant time, Dehertogh's record includes convictions for crimes of violence. Most disturbingly, his record includes multiple violations of probation. Additionally, while he has not been charged with any drug related offenses, given his admitted substance abuse problems, the fact that a gym bag tied to him at the time of his arrest included pills containing amphetamine raises red flags. Furthermore, his current living arrangements do not give me a comfort level that he will remain sober and/or have sufficient structure to assure that he will refrain from illegal activity.

Given that Dehertogh appears to be a minor player in this conspiracy, this is a very close case. However, given the totality of the circumstances, I find by clear and convincing evidence that Dehertogh is a danger to the community and that there are no conditions or combination of conditions that I could impose that would assure the safety of the community if he were released.

#### ii. Whether Dehertogh Poses A Risk Of Flight

Dehertogh is a Belgium native. He claims to be her legally, however, his immigration status is unclear.[3] While he claims to be living at a sober house, Pretrial Service was not able to verify that his residence is affiliated with Answer House. Therefore, the exact nature of his residence would have to be verified before I could consider releasing him to return there. Dehertogh's record includes defaults and the fact that he may be using drugs raises further concerns as to whether he will appear as required. Dehertogh has little or no ties to this District.

Although this is a close call, considering the totality of these circumstances, I find by preponderance of the evidence that Dehertogh poses a risk of flight and that there are no conditions or combination of conditions that I could impose that will assure his appearance, as required.[4]

### d. Milby

#### i. Whether Milby Poses A Danger To The Community

The Government has alleged that Milby has conspired to extort money/property from Carucci. Milby was present at the Four Seasons dinner meeting with Lee. At the same time, I would characterize him as having a minor role in the conspiracy. While he has been charged with various crimes, he has no prior criminal convictions. The two Chapter 209A restraining orders taken out against him concern me, but there is no evidence that he violated the terms of either.

---

[3] Given the length of time that Dehertogh has been here, if his parents became citizens, it is possible, if not probable, that he has derivative citizenship. It would be helpful to have his immigration status clarified.

[4] As noted, I consider the issue of whether to detain Dehertogh is a very close call. I encourage counsel to explore whether Dehertogh could post some form of surety or propose other conditions which would give me a level of comfort that he will not be a danger to the community or risk of flight. If he is able to do so, I may reconsider this Order of Detention.

Given the totality of the circumstances, I cannot find by clear and convincing evidence that Milby is a danger to the community and that there are no conditions or combination of conditions that I could impose that would assure the safety of the community if he were released. Therefore, I decline to detain him on dangerousness grounds.

ii. Whether Milby Poses A Risk Of Flight

Milby is a United States citizen. His entire family resides in the United States, most of them locally.  He does have two defaults on his record and I have no information concerning his assets and liabilities.  Nonetheless, I find that there are strict conditions which I can impose which will assure his appearance as required and therefore, I decline to hold him on risk of flight grounds.

**Order of Detention Pending Trial**

In accordance with the foregoing memorandum,

IT IS ORDERED:

1.  That Michael Lee and Patrick Dehertogh be committed to the custody of the Attorney General, or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2.  That Michael Lee and Patrick Dehertogh be afforded a reasonable opportunity for private consultation with counsel; and

3.  On order of a Court of the United States or on request by an attorney for the Government, the person in charge of the corrections facility in which Michael Lee and Patrick

Dehertogh are detained and confined shall deliver them to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

## **RIGHT OF APPEAL**

THE PERSON OR PERSONS DETAILED BY THIS ORDER MAY FILE A MOTION FOR REVOCATION OF AMENDMENT OF THE ORDER PURSUANT TO 18 U.S.C. § 3145(b).

       /s/ Timothy S. Hillman
**TIMOTHY S. HILLMAN**
**MAGISTRATE JUDGE**